**WHITE AND WILLIAMS LLP**
One Penn Plaza
18th Floor - Suite 1801
New York, New York 10119
(212) 631-4406
*Attorneys for Defendants, UnumProvident*
*Corporation and Provident Life and*
*Casualty Insurance Company*
**Andrew I. Hamelsky (AH-6643)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SEAMON,<br><br>               Plaintiff,<br><br>v.<br><br>UNUM PROVIDENT CORPORATION<br>and PROVIDENT LIFE AND<br>CASUALTY INSURANCE COMPANY,<br><br>               Defendants. | Civil Action No.:<br><br><br>**NOTICE OF REMOVAL** |

TO:    **THE UNITED STATES DISTRICT COURT**
        **FOR THE SOUTHERN DISTRICT OF NEW YORK**

    **PLEASE TAKE NOTICE** that Defendants, UnumProvident Corporation k/n/a Unum

Group ("Unum") and Provident Life and Casualty Insurance Company ("Provident Life"),

hereby remove the above-entitled action from the Supreme Court of the State of New York,

County of New York, to the United States District Court for the Southern District of New York,

pursuant to 28 U.S.C. § 1332(a)(1) and 23 U.S.C. § 1441, and allege as follows:

    1.    An action has been commenced and is now pending in the Supreme Court of the

State of New York, County of New York, entitled: *Michael Seamon v. UnumProvident*

*Corporation and Provident Life and Casualty Insurance Company.* The case has been assigned

Index Number 102036/07.

2.    The defendants have filed this Notice of Removal within 30 days of notice to the first defendant.

3.    On March 9, 2007, the Summons and Complaint was served upon defendants. (See Summons and Complaint attached hereto **Exhibit 1**).

4.    Based on the foregoing, 30 days since the first notice to the defendants has not expired and the defendants have filed this Notice of Removal within 30 days of receipt as required by U.S.C. § 1446(b). No further proceedings have occurred in this action.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, this action is one that may be removed to this Court by defendants pursuant to 28 U.S.C. § 1441 in that it is a civil action where the matter in controversy is likely to exceed the sum of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

6.    Plaintiff is at the time of removal, and was at the time of the institution of this action a resident of the State of Georgia, residing at 365 Birkdale Drive, Fayetteville, GA 30215

7.    Defendant, Unum is at the time of removal, and was at the time of the institution of this action, a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business in Chattanooga, TN.

8.    Defendant, Provident Life is at the time of removal, and was at the time of the institution of this action, a corporation organized and existing pursuant to the laws of the State of Tennessee, with its principal place of business in Chattanooga, TN.

9.    This action arises out of a disability policy issued to plaintiff, Michael Seamon. (See Summons and Complaint attached hereto as **Exhibit 1.**)

10.    Provident Life issued Disability Policy Number 36-600-7887392 to plaintiff, who alleges that he has been totally disabled pursuant to the terms and conditions of the policy and

-2-

has filed a claims alleging such disability.  (See Summons and Complaint attached hereto as **Exhibit 1**.)

11.    The policy issued to plaintiff provides for benefits of at least $400 per month in the event that the plaintiff is totally disabled under the terms and conditions of the policy until age 65. The plaintiff filed a claim for disability benefits on November 18, 2002 and at that time, he was 45 years old.  Therefore, plaintiff alleges that he is entitled to benefits until age 65 at $4,800 per month or $94,800.00.(applying the 90 day elimination period).(See Summons and Complaint attached hereto as **Exhibit 1**.)

12.    In addition to the foregoing, the plaintiff is seeking a declaration that he is totally disabled pursuant to Policy Number 36-600-7887392, and is seeking benefits from the date of his alleged disability in November of 2002, as well as future benefits.  (See Complaint, Par. 21.)

13.    In addition to the foregoing, the plaintiff also seeks an award of punitive damages and attorneys' fees as set forth in Par. 22  and Par. (D) of the "Wherefore Clause".

14.    Accordingly, the amount in controversy in this matter exceeds $75,000.00.

15.    By reason of the foregoing, this action is within the Court's removal jurisdiction pursuant to 28 U.S.C. § 1441.

16.    Written notice of the filing of this Notice of Removal has been served upon plaintiff's counsel as required by law.

17.    A true copy of this Notice of Removal has been filed with the Clerk of the Supreme Court of the State of New York, County of New York, as required by law.

NYCDMS 20834v.2

# EXHIBIT 1

# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------X

MICHAEL SEAMON,
      Plaintiff,

      -against-

UNUM PROVIDENT CORPORATION and
PROVIDENT LIFE AND CASUALTY
INSURANCE COMPANY,
      Defendants.

------------------------------------------X

Index No. *102 036/07*

Date Purchased: *2/9/07*

**Summons**

Plaintiff designates New York County as the place of trial.

Venue is based on the addresses of defendants at 99 Park Avenue, New York, NY 10017. County of New York.

TO THE ABOVE NAMED DEFENDANTS:

    **You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 9, 2007

Eugene A. Gaer
Attorney for Plaintiffs
Office address and telephone:
420 Lexington Avenue, Suite 2620
New York, New York 10170
(212) 949-9696

Defendants' addresses:

Unum Provident Corporation
99 Park Avenue
New York, New York 10017

Provident Life and Casualty
Insurance Company
99 Park Avenue
New York, New York 10017

RECEIVED
3/09/07
1:06PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------X

MICHAEL SEAMON,                          :
                    Plaintiff,           :
                                         :
           -against-                     :        Index No.
                                         :
UNUM PROVIDENT CORPORATION and           :
PROVIDENT LIFE AND CASUALTY              :        VERIFIED
INSURANCE COMPANY,                       :        COMPLAINT
                    Defendants.          :
------------------------------------------X

     Plaintiff MICHAEL SEAMON, by his attorney Eugene A. Gaer, for his verified complaint alleges as follows:

    1.  This is an action for declaratory relief pursuant to CPLR 3001 and for related damages arising from defendants' failure to honor the disability insurance policy they issued to plaintiff.

    2.  As more particularly set forth below, plaintiff is a disabled person who holds both a regular and a supplemental disability insurance policy, both issued to him by defendants, but defendants have wilfully failed and refused to honor one of the policies.

    3.  Upon information and belief, defendants Unum Provident Corporation and Provident Life and Casualty Insurance Company are insurance companies, which have offices at 99 Park Avenue, New York, New York, and which are duly licensed to market and issue insurance policies in the State of New York.

    4.  Upon information and belief, defendants share the same ownership, management and operations and are in all material

respects alter-egos of one another.

5. Prior to July 2002 plaintiff had been issued disability income protection insurance policy # LND338735 by defendants.

6. In August 2002 defendants contacted plaintiff by mail and offered to sell him a "SmartStep" policy which was described as a supplement to his existing disability policy.

7. The offer set forth in paragraph 6 was made directly by defendants to plaintiff.

8. The application for defendants' SmartStep disability insurance policy specifically stated in boldface type "No Broker Signature Required."

9. On August 17, 2002, plaintiff accepted defendants' offer by completing and signing the application for defendants' SmartStep disability policy (Exhibit 1 hereto) and mailing it to defendants.

10. Plaintiff's application was received by defendants on August 21, 2002.

11. On November 17, 2002, defendants issued to plaintiff SmartStep supplemental disability insurance policy # 36-600-7887392. Exhibit 2 hereto.

12. SmartStep Policy # 36-600-7887392 specifically provides that it is a legal and binding contract between plaintiff and defendants.

13. The application for SmartStep Policy # 36-600-7887392 provided that premium notices were to be sent semi-annually to plaintiff's residence address.

2

14. Defendants never sent a premium notice or other invoice to plaintiff at his residence address respecting SmartStep Policy # 36-600-7887392.

15. On November 18, 2002, plaintiff became disabled.

16. Defendants were aware of plaintiff's disability, as demonstrated by their making payments to him under policy # LND338735.

17. SmartStep Policy # 36-600-7887392 contained a provision that premiums would be waived in the event of plaintiff's disability.

18. Plaintiff has submitted a claim to defendants for payment of benefits to which he is entitled under SmartStep Policy # 36-600-7887392.

19. Defendants have wilfully and intentionally failed and refused to pay plaintiff any benefits under SmartStep Policy # 36-600-7887392.

20. Plaintiff is entitled to a judgment declaring that SmartStep Policy # 36-600-7887392 is a fully effective and enforceable contract of insurance between him and defendants.

21. Plaintiff is entitled to a judgment directing defendants to pay him (a) benefits to which he has been entitled since he became disabled in November 2002; and (b) future benefits, as provided for in SmartStep Policy # 36-600-7887392  so long as he remains disabled and qualified to receive such benefits.

22. The failure of defendants to honor their contractual commitments to plaintiff constitute wilful acts of bad faith as

3

to which defendants may be chargeable with punitive damages.

WHEREFORE, Plaintiff demands judgment

(A) of a declaration that SmartStep Supplemental Disability Insurance Policy # 36-600-7887392 is a fully effective and enforceable policy and has been such since the acceptance of plaintiff's application in August 2002;

(B) awarding plaintiff damages for benefits which defendants have failed to pay under said Policy since November 18, 2002;

(C) directing defendants to pay plaintiff future disability benefits as provided for in said Policy;

(D) awarding plaintiff punitive damages and attorney's fees to the extent provided by law owing to defendants' wilful and bad faith conduct;

together with interest and the costs and disbursements of this action.

February 9, 2007

EUGENE A. GAER
Attorney for Plaintiff
420 Lexington Avenue, Suite 2620
New York, New York 10170
(212) 949-9696 (telephone)
(212) 949-6241 (fax)

4

<u>VERIFICATION</u>

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

       EUGENE A. GAER, being duly sworn, deposes and says:

       I am the attorney for plaintiff Michael Seamon. I have read the foregoing complaint and know its contents. The complaint is true based upon my review of the relevant records provided to me by my client, except for matters alleged upon information and belief, and as to those matters, I believe it to be true. The reason I am submitting this verification instead of plaintiff is that he is not at this present in the County of New York.

                            _____
                            EUGENE A. GAER

Sworn to before me this
9th day of February, 2007

_____
Notary Public

HARRIET HARKAVY
Notary Public, State of New York
No. 31-4508485
Qualified in New York County
Commission Expires Dec. 31, 2009

**EXHIBIT 1**



MICHAEL SEAMON, the Insured

Policy Number 36-600-7887392

*Your Coverage & Policy Benefits*



Provident Life and Casualty Insurance Company
1 Fountain Square, Chattanooga, TN 37402


MICHAEL SEAMON, the Insured

Policy Number 36-600-7887392


### Disability Income Policy

**NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65, NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTION AFTER YOU REACH AGE 65.  SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit with a limited benefit period while You are actively and regularly employed a minimum of 30 hours per week. There is no age limit. This option is explained in Part 4.

**Your Right To Cancel.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Your authorized representative through whom it was purchased by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 1 Fountain Square, Chattanooga, TN 37402. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**Read Your Policy Carefully.** It is a legal contract between You and Us.

Signed for by Provident Life and Casualty Insurance Company


Vice President, Corporate Secretary
and Assistant General Counsel

Chairman, President and
Chief Executive Officer

## TABLE OF CONTENTS

                                                                    Page

Renewal Provisions  . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Policy Schedule  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Part -- 1  Definitions  . . . . . . . . . . . . . . . . . . . . . . . . .  4

Part -- 2  Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Part -- 3  Premium and Reinstatement  . . . . . . . . . . . . . . . . . .  9

Part -- 4  Renewal Option After Age 65  . . . . . . . . . . . . . . . . . 11

Part -- 5  Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Part -- 6  The Contract  . . . . . . . . . . . . . . . . . . . . . . . . . 14

Part -- 7  Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Part -- 8  Recurrent and Concurrent Disability  . . . . . . . . . . . . . 16

A copy of Your application, added benefits You have purchased,
and any added provisions are attached at the back of the Policy.

POLICY SCHEDULE

Insured – MICHAEL SEAMON
Effective Date – November 17, 2002

Policy Number – 36-600-7887392
First Renewal Date – May 17, 2003
Renewal Term – Six Months

--------------------------------Summary of Premium--------------------------------

Non-Tobacco User

| | |
|---|---|
| Annual Premium for Disability Benefits | $287.77 |
| Annual Premium for Additional Benefits | $157.12 |
| Total Annual Premium | $444.89 |
| Your Semi-annual Premium | $231.34 |

Other Premium Paying Methods:
        $444.89 Annual
        $115.67 Quarterly
         $38.48 Monthly (Insurematic Bank Draft)

-----------------------Table of Total Disability Benefits-----------------------

| Elimination Period | Maximum Benefit Periods For Total Disability | Total Disability Monthly Amount |
|---|---|---|
| 90 Days | To Age 65 | $400.00 |

The Maximum Benefit Periods for Total Disability may change due to Your age at Total Disability. Please see the Maximum Benefit Periods for Total Disability section of the Policy Schedule.

Maximum Benefit Period for Mental Disorders: 24 Months over the life of Your Policy

Benefits payable beyond the Maximum Benefit Period for Mental Disorders for a hospital confinement due to a Disability from Mental Disorders will in no event exceed the Maximum Benefit Periods for Total Disability.

Your Occupation Period:                         Same as the Maximum Benefit
                                                !Periods for Total Disability

Maximum Benefit Period for Recovery Benefits:   12 Months

(Policy Schedule is continued on next page.)

POLICY SCHEDULE (continued)

--------------------Maximum Benefit Periods for Total Disability--------------------

To Age 65:

| | |
|---|---|
| Before Age 61 | To Age 65 |
| At Age 61 but before Age 62 | 48 Months |
| At Age 62 but before Age 63 | 42 Months |
| At Age 63 but before Age 64 | 36 Months |
| At Age 64 but before Age 65 | 30 Months |
| At or after Age 65 but before Age 75 | 24 Months |
| At or after Age 75 | 12 Months |

---------------------------Residual Disability Benefits---------------------------

| Work Incentive Period | Maximum Benefit Period For Residual Disability |
|---|---|
| 12 Months | Same as the Maximum Benefit Periods for Total Disability |

---------------------------Lifetime Continuation Option---------------------------

| Elimination Period | Benefit Amount for Nursing Home and Home Care Insurance Policy | Lifetime Maximum Benefit Amount for Nursing Home and Home Care Insurance Policy |
|---|---|---|
| 90 Days | $3,000 per month | $216,000 |

---------------------------Table of Additional Benefits---------------------------

| Description | | Semi-annual Premium Prior to Age 65 |
|---|---|---|
| Catastrophic Disability Benefit | | $73.00 |
| Rider Effective Date: | November 17, 2002 | |
| Catastrophic Disability Elimination Period: | 90 Days | |
| Catastrophic Disability Benefit Amount: | $4,000 per month | |
| Lifetime Continuation Option Increase (LCOI) | | $8.69 |
| Rider Effective Date: | November 17, 2002 | |
| LCOI Option Amount: | $1,000 | |

**LIFETIME CONTINUATION OPTION INCREASE (LCOI) RIDER**

This rider is a part of Your Policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of the Policy. All provisions of Your Policy apply to this rider and remain the same except where We change them by this rider.

This rider is effective on the Effective Date of Your Policy or the Rider Effective Date, whichever is later.

Your Policy is amended by adding or changing the following provisions:

### DEFINITIONS

As used in this rider:

**LCOI Option Date** means the date You exchange Your Policy for a Nursing Home and Home Care Insurance Policy under the Lifetime Continuation Option.

**LCOI Option Amount** is the maximum amount by which You can increase the Nursing Home and Home Care Insurance Benefit Amount on the LCOI Option Date. It is shown in the Policy Schedule.

**Nursing Home and Home Care Insurance Benefit Amount** is the benefit amount We will issue to You under the Lifetime Continuation Option provision. It is shown in the Policy Schedule.

### BENEFITS

On the LCOI Option Date, You may increase the Nursing Home and Home Care Insurance Benefit Amount up to the full LCOI Amount, without submitting evidence of insurability. In no event will We increase the Nursing Home and Home Care Insurance Benefit Amount by more than the LCOI Amount.

### PREMIUM

The premium for the LCOI Amount will be at the rate for Your age on the Option Date.

### TERMINATION

This rider will end:

1. When You exchange Your Policy for a Nursing Home and Home Care Insurance Policy under the Lifetime Continuation Option Benefit;
2. If the premium for Your Policy or this option is not paid on time;
3. Upon Your written request to end this option; or
4. On the date Your Policy terminates;

whichever happens first.

PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY

Chairman, President and Chief Executive Officer

C-600-LCOI-NY              MICHAEL SEAMON 36-600-7887392              Page 1

## LIFETIME CONTINUATION OPTION RIDER

This rider is a part of Your Policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of the Policy. All provisions of Your Policy apply to this rider and remain the same except where We change them by this rider.

This rider is effective on the Effective Date of Your Policy or the Rider Effective Date, whichever is later.

Your Policy is amended by adding or changing the following provisions:

### DEFINITIONS

**Benefit Amount for Nursing Home and Home Care Insurance Policy** is shown in the Policy Schedule. It is the benefit amount We will issue to You under the Nursing Home and Home Care Insurance Policy, subject to Your timely payment of premiums for Your Policy.

**Lifetime Maximum Benefit Amount for Nursing Home and Home Care Insurance Policy** is shown in the Policy Schedule. It is the total dollar amount of benefits that will be paid under the Nursing Home and Home Care Insurance Policy.

**Nursing Home and Home Care Insurance Policy** means an individual nursing home and home care insurance policy that is subject to the following terms:

1.  It will be an individual nursing home and home care insurance policy that We, or Our affiliates offer at the time the exchange is made and will be issued with the Benefit Amount for Nursing Home and Home Care Insurance Policy and Lifetime Maximum Benefit Amount for Nursing Home and Home Care Insurance Policy;
2.  It will meet or exceed all applicable federal and state minimum standards in effect for such policies at the time the exchange is made;
3.  The premium for the Nursing Home and Home Care Insurance Policy will be the premium We charge for Your age and Nursing Home and Home Care Insurance Benefit Amount at the time the exchange is made.

### BENEFITS

You may exchange Your Policy for a Nursing Home and Home Care Insurance Policy without submitting evidence of insurability:

1.  Between age 60 and age 70 if You are not Disabled;
2.  Between age 65 and age 70 if You are Disabled, but have received the maximum benefits allowable under this Policy.
3.  On Your age 70. If You are Disabled and receiving benefits on this date, You may defer the exchange until You have received the maximum benefit amount for the Disability.

**PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY**

*Harold Chandler*

Chairman, President and Chief Executive Officer

**CHOICE RIDER**

This rider is a part of Your Policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of the Policy. All provisions of Your Policy apply to this rider and remain the same except where We change them by this rider.

This rider is effective on the Effective Date of Your Policy or the Rider Effective Date, whichever is later.

Your Policy is amended by adding or changing the following provisions:

### DEFINITIONS

**Full Time Work** means working at least as many hours as You worked prior to Disability. In no event will We consider Full Time Work to mean more than 50 hours per week.

**Maximum Benefit Period for Recovery Benefits** is the longest period of time for which We will pay benefits during a Recovery. It is shown in the Policy Schedule.

**Recovery** means that, following a Disability that continued at least until the end of the Elimination Period:

1. You incur a Loss of Earnings that is due to the prior Injury or Sickness that caused the Disability; and

2. You have returned to Full Time Work in Your Occupation.

### BENEFITS

**Benefits for Recovery**

If You experience a Recovery, We will pay benefits as follows:

1. Benefits start to accrue on the day after Your Disability ends.

2. The Recovery Benefit will be determined each month using the following formula:

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \times \begin{array}{c}\text{Total Disability}\\ \text{Monthly Amount}\end{array} = \text{Recovery Benefit}$$

3. The Recovery Benefit will be paid for as long as Your Recovery continues, but not beyond the Maximum Benefit Period for Recovery Benefits.

**PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY**

*Harold Chandler*

Chairman, President and Chief Executive Officer

C-600-C                    MICHAEL SEAMON 36-600-7887392                    Page 1

## CATASTROPHIC DISABILITY BENEFIT RIDER

This rider is a part of Your Policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of the Policy. All provisions of Your Policy apply to this rider and remain the same except where We change them by this rider.

This rider is effective on the Effective Date of Your Policy or the Rider Effective Date, whichever is later.

Your Policy is amended by adding or changing the following provisions:

### DEFINITIONS

**Activities of Daily Living (ADLs)** are:

1. **Bathing** – means washing Yourself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower.

2. **Dressing** – means putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.

3. **Toileting** – means getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.

4. **Transferring** – means moving into or out of a bed, chair, or wheelchair.

5. **Continence** – means the ability to maintain control of bowel or bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).

6. **Eating** – means feeding Yourself by getting food into the body from a receptacle (such as plate, cup or table) or by feeding tube or intravenously.

**ADL Disabled** means that, because of Injuries or Sickness, You are unable to perform two or more Activities of Daily Living (ADLs) without Stand-by Assistance.

**Catastrophic Disability** or **Catastrophically Disabled** means that, because of Injuries or Sickness, You are:

1. Cognitively Impaired and You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You; or
2. ADL Disabled.

**Catastrophic Disability Benefit Amount** is shown in the Policy Schedule.

**Catastrophic Disability Elimination Period** is shown in the Policy Schedule.

**Cognitive Impairment** or **Cognitively Impaired** means that, because of Injuries or Sickness, You have suffered a deterioration or loss in Your intellectual capacity which requires another person's assistance or verbal cueing to protect Yourself or others as measured by clinical evidence and standardized tests which reliably measure Your impairment. Such loss in intellectual capacity must result from Injury, Sickness, Alzheimer's Disease or similar form of senility or irreversible dementia.

**Disability** or **Disabled**, as defined in Your Policy, is amended to include Catastrophically Disabled or Presumptively Disabled.

**Presumptive Disability** or **Presumptively Disabled** means, that, because of Injuries or Sickness, You suffer the total and permanent loss of:

1. speech;
2. hearing in both ears;
3. sight in both eyes; or
4. use of both arms, both legs, or one arm and one leg.

**Stand-by Assistance** means You require the presence of another human being to ensure that all or part of an ADL may be completed safely. Stand-by Assistance may also mean that in order to accomplish an ADL, You need verbal cueing.

## BENEFITS

### Benefits for Catastrophic Disability

If You are Catastrophically Disabled, We will pay benefits as follows:

1. Benefits start to accrue on the day of Catastrophic Disability following the Catastrophic Disability Elimination Period.
2. The Catastrophic Disability Monthly Amount will be paid for as long as Your Catastrophic Disability continues, but not beyond the Maximum Benefit Period for Total Disability.

### Benefits for Presumptive Disability

If You are Presumptively Disabled, We will pay benefits as follows:

1. Benefits start to accrue on the day Your Presumptive Disability begins.
2. The Total Disability Monthly Amount and Catastrophic Disability Monthly Amount will be paid for as long as Your Presumptive Disability continues, but not beyond the Maximum Benefit Period for Total Disability.

You must present satisfactory proof of Your Presumptive Disability loss, but there is no requirement for the continued care of a Physician. We will presume You to be Presumptively Disabled as long as such loss continues, whether or not You are able to work or earn an income.


PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY

*Howard Chandler*

Chairman, President and Chief Executive Officer


C-600-CAT              MICHAEL SEAMON 36-600-7887392              Page 2

## INTRODUCTION

This Policy is a legal contract between You and Us.  It is issued in consideration of the payment, in advance, of the premium and of Your statements and representations in the application(s).  A copy of the application(s) is attached and is part of Your Policy.  Omissions and misstatements in the application(s) could cause an otherwise valid claim to be denied or Your Policy to be rescinded.

We agree to pay benefits subject to all of the provisions contained in Your Policy. You agree to do all that would be reasonably expected to mitigate any loss.  Loss must begin while Your Policy is in force.

## PART 1 – DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS.  THEY ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY. REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

**Any Occupation** means Any Occupation for which You are reasonably fitted based on education, training or experience.

**Complications of Pregnancy** means conditions requiring medical treatment prior or subsequent to the termination of pregnancy whose diagnoses are distinct from pregnancy, but which are adversely affected by pregnancy or caused by pregnancy, such as acute nephritis, nephrosis, cardiac decompensation, missed abortion, disease of the vascular, hemopoieatic, nervous, or endocrine systems, and similar medical and surgical conditions of comparable severity; but will not include false labor, occasional spotting, physician prescribed rest during the period of pregnancy, morning sickness and similar conditions associated with the management of a difficult pregnancy not constituting a classifiably distinct complication of pregnancy; hyperemesis gravidarum and pre-eclampsia requiring hospital confinement, ectopic pregnancy which is terminated, and spontaneous termination of pregnancy which occurs during a period of gestation in which a viable birth is not possible; and conditions requiring medical treatment after the termination of pregnancy whose diagnoses are distinct from pregnancy, but which are adversely affected by pregnancy, or caused by pregnancy.

**Concurrent Disability** means a Disability that is caused by more than one Injury and/or Sickness.

**Contest** means that We question the validity of coverage under Your Policy by letter to You.  This contest is effective on the date We mail the letter and refund the premium to You.

**CPI-U** means the Consumer Price Index for all Urban Consumers.  It is published by the United States Department of Labor.  If this index is discontinued or if the method of computing is materially changed, We may choose another index.  We will choose an index that, in Our opinion, would most accurately reflect the rate of change in the cost of living in the United States.  CPI-U will then mean the index We choose.

**CPI-U Change** means the result of a computation We will make as of each Review Date. We will divide the CPI-U for the most recent Index Month by the CPI-U for the Index Month prior to the most recent Index Month.

**CPI-U Factor** means the result of the CPI-U Change as of the current. Review Date multiplied by the CPI-U Change for each prior Review Date occurring since the Disability began. The CPI-U Factor as of the first Review Date will equal the CPI-U Change as of that Review Date. The CPI-U Factor is determined as of each Review Date while Disability continues.

**Disability** or **Disabled** means that You are Totally Disabled or Residually Disabled. Disability must start while this Policy is in force; except, if the Policy terminates, a Disability resulting from Injuries may begin within 30 days from the date of an accident that occurred before the Policy terminated. A Disability begins with an Elimination Period and has a maximum benefit period applied to it.

**Effective Date** means the date that the Policy becomes effective. It is shown in the Policy Schedule.

**Elimination Period** means the number of days that must elapse in a Disability before benefits become payable. The number of days is shown in the Policy Schedule. These days need not be consecutive; they can be accumulated during a Disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

**Hospital** means a short-term, acute, general hospital, which:
1. is primarily engaged in providing, by or under the continuous supervision of physicians, to inpatients, diagnostic services and therapeutic services for diagnosis, treatment and care of injured or sick persons;
2. has organized departments of medicine and major surgery;
3. has a requirement that every patient must be under the care of a physician or dentist;
4. provides 24-hour nursing service by or under the supervision of a registered professional nurse (R.N.);
5. if located in New York State, has in effect a hospitalization review plan applicable to all patients which meets at least the standards set forth in section 1861(k) of United States Public Law 89-97, (42 USCA 1395x(k)); and
6. is duly licensed by the agency responsible for licensing such hospitals.

In no event will Hospital, other than incidentally, mean a place of rest, a place primarily for the treatment of tuberculosis, a place for the aged, a place for drug addicts, alcoholics, or a place for convalescent, custodial, educational, or rehabilitative care.

**Index Month** means the calendar month four months prior to the calendar month in which a Review Date occurs. The first Index Month for any Disability will be the calendar month four months prior to the month that Your Disability began.

**Injury** or **Injuries** means accidental bodily injury that occurs after the Effective Date and while Your Policy is in force.

**Insured** is named in the Policy Schedule and is the owner of this Policy.

**Loss of Earnings** for any month means Your Prior Earnings minus Your Monthly Earnings in the month for which a benefit is claimed. This difference will be considered a Loss of Earnings to the extent it is due to the Injury or Sickness that caused the Disability. The Loss of Earnings must be at least 20% of Prior Earnings.

**Maximum Benefit Period for Mental Disorders** is the longest period of time for which We will pay benefits for loss contributed to or caused by Mental Disorders. It is shown in the Policy Schedule.

**Maximum Benefit Period for Residual Disability** is the longest period of time for which We will pay benefits during a Residual Disability. It is shown in the Policy Schedule.

**Maximum Benefit Period for Total Disability** is the longest period of time for which We will pay benefits during a Total Disability. It is shown in the Policy Schedule.

**Mental Disorders** means any disorder (except dementia resulting from stroke, trauma, infections or degenerative diseases such as Alzheimer's disease) classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a Disability. Such disorders include, but are not limited to psychotic, emotional or behavioral disorders, or disorders relatable to stress or to substance abuse or dependency. If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then in use by the American Psychiatric Association as of the start of a Disability.

**Monthly Earnings** means Your salary, wages, commissions, bonuses, fees and income earned for services performed. If You own any portion of a business or profession, it means:

1. Your share of income earned by that business or profession;
2. less Your share of business expenses that are deductible for Federal income tax purposes;
3. plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.

Monthly Earnings does not include:

1. income from deferred compensation plans, disability income policies or retirement plans; or
2. income not derived from Your vocational activities.

We will allow either the cash or accrual accounting method, but during a Disability, the same method must be used when determining Loss of Earnings.

**Physician** means a person who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness that results in a Disability. A Physician cannot be You or anyone related to You by blood or marriage, a business or professional partner, or any person who has a financial affiliation or business interest with You. A Physician must be a licensed psychiatrist or a licensed doctoral level psychologist if a Disability is due to a Mental Disorder that is classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM), or its successor, published by the American Psychiatric Association as of the beginning of a Disability.

**Physician's Care** means the regular and personal care of a Physician as frequently as is medically required according to standard medical practice, and which, under prevailing medical standards, is appropriate for the condition causing the Disability.

**Policy** means the legal contract between You and Us. The policy, any application(s), the Policy Schedule(s) and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

**Pre-existing Condition** means a sickness or physical condition for which within two years prior to the Effective Date:

1. symptoms existed that would ordinarily cause a prudent person to seek advice or treatment from a Physician; or
2. advice or treatment was recommended by or received from a Physician.

**Prior Earnings** means the greater of Your Monthly Earnings:

1. for the 12 months just prior to the Disability for which claim is made; or
2. for the fiscal year with the higher earnings of the last two fiscal years prior to the Disability for which claim is made.

Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior earnings by the CPI-U Factor. The result will be used until the next Review Date to compute Residual Disability Benefit amounts payable. The inflation adjustment increase will be at least 2% of Your Prior Earnings amount. In no event will the inflation adjustment increase be more than 10% of Your Prior Earnings amount.

**Recurrent Disability** means a Disability that occurs within twelve months after the end of a previous Disability that is due to the same or related causes.

**Residual Disability or Residually Disabled** means that You are not Totally Disabled, but due to Injury or Sickness:

1. You are unable to perform one or more of the material and substantial duties of Your Occupation; or You are unable to perform them for as long as normally required to perform them; and
2. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You.

After the end of the Elimination Period, Residual Disability or Residually Disabled also means:

3. You incur a Loss of Earnings while You are engaged in Your Occupation or Any Occupation.

**Review Date** means each anniversary of the start of a Disability.

**Rider Effective Date** means the date that the Rider becomes effective. It is shown in the Policy Schedule.

**Sickness** means sickness or disease that first manifests itself after the Effective Date and while Your Policy is in force. It includes Disability from surgery performed to improve Your appearance or prevent disfigurement or to transplant part of Your body to someone else.

**Total Disability or Totally Disabled** means that because of Injuries or Sickness:

1.  You are unable to perform the material and substantial duties of Your Occupation; and
2.  You are not engaged in any other occupation; and
3.  You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

After the end of the Your Occupation Period, then Total Disability also means:

4.  You are unable to perform the material and substantial duties of Any Occupation.

**Total Disability Monthly Amount** is shown in the Policy Schedule.

**We, Our, and Us** refer to The Provident Life and Accident Insurance Company and its affiliates.

**Work Incentive Period for Residual Disability** is shown in the Policy Schedule.

**You, Your and Yourself** refer to the Insured named in the Policy Schedule.

**Your Occupation** means the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled.

**Your Occupation Period** is shown in the Policy Schedule.


### PART 2 - EXCLUSIONS

**Exclusions**
We will not pay benefits for a Disability contributed to or caused by:

1.  war or act of war, whether declared or undeclared; or
2.  normal pregnancy or childbirth during the first 90 days of Disability (We will pay benefits for loss caused by Complications of Pregnancy.); or
3.  intentionally self inflicted injuries; or
4.  any loss We have excluded by name or specific description (any such exclusion will appear in the Policy Schedule).

We will not pay benefits for any period of time during a Disability that You reside outside the United States or its possessions, or the countries of Canada or Mexico for more than 12 months in the aggregate, unless We agree in writing.  You will be considered to reside outside these countries when You have been outside the United States or its possessions, Canada or Mexico for a total period of 6 months or more during any 12 consecutive months during a Disability.

**Pre-existing Conditions Limitation**
We will not pay benefits for a Disability caused by a Pre-existing Condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this Policy.

## PART 3 - PREMIUM AND REINSTATEMENT

### Payment of Premium

The first term of this Policy starts on the Effective Date shown in the Policy Schedule. It ends on the First Renewal Date. Later terms are periods for which You pay renewal premiums. All terms will begin and end at 12:01 A.M., Standard Time at Your home. You continue the Policy in force from term to term by paying premiums when due. The renewal premium for each term is due on the day the preceding term ends, subject to the grace period.

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But, We will not allow a change while You are Disabled.

### Grace Period

Unless not less than 30 days prior to the renewal date We have delivered to You or mailed by first class mail to Your last address shown in Our records written notice of Our intent not to renew this Policy beyond the period for which the premium has been accepted, a grace period of 31 days is allowed for late payement of premium, falling due after the first premium. Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

### Reinstatement

If a renewal premium is not paid before the grace period ends, the Policy will lapse. You may apply to reinstate this Policy within six months from the date of the Policy lapse by: 1) completing an application for reinstatement and 2) paying the full amount of overdue premium. You will be given a conditional receipt for the premium tendered. If Your application is approved, the Policy will be reinstated as of the approval date. If We fail to act on Your application (by approving or disapproving it) within 45 days from the date of the conditional receipt, the Policy will be reinstated on that 45th day.

If We or one of Our authorized representatives accept the overdue premiums without requiring an application for reinstatement, the Policy will be reinstated.

The reinstated Policy will cover only loss that results from Injuries that occur after the date of reinstatement or Sickness that is first manifested more than 10 days after that date. In all other respects, Your rights and Ours will remain the same, subject to any provisions noted on or attached to the reinstated Policy.

**Premium Refund**
We will make pro-rata refunds of premium:

1. in the event of Your death (such refunds will be made to Your estate for any premium paid for a period beyond the date of Your death.);
2. if the Policy terminates because You stop working (except because of Injury or Sickness) when this Policy has been continued after Your 65th birthday, or if later, after it has been in force for five years;
3. if You suspend Your Policy in accordance with the Suspension During Military Service provision; or
4. in accordance with the Waiver of Premium provision.

**Suspension During Military Service**
You may suspend Your Policy if You enter full-time active duty: 1) in the military (land, sea or air) service of any nation or international authority, or 2) in a reserve component of the armed forces of the United States, including the National Guard. However, You may not suspend the Policy during active military training lasting three months or less. The Policy will not be in force while it is suspended, and You will not have to pay any premiums. When We receive Your written request to suspend the Policy, We will refund the pro-rata portion of any premium paid for a period beyond the date We receive Your request.

You may place this Policy back in force without evidence of insurability. The Policy may be placed back in force as of the date of termination of the period of full-time active duty. Your coverage will start again when:

1. We receive Your written request to place the Policy back in force; and
2. You have paid the pro-rata premium for coverage until the next premium due date.

We must receive Your request and premium payment within 90 days after the date Your active duty service in the military ends. Premiums will be at the same rate they would have been had Your Policy remained in force. In all other respects, You and We will have the same rights under the Policy as before it was suspended.

**Waiver of Premium**
After 90 days of Disability resulting from Injuries or Sickness not excluded from coverage, We will:

1. refund any premiums for this Policy that were due and paid while You were Disabled; and
2. waive the payment of premiums that thereafter become due for as long as the Disability continues, but not beyond the maximum benefit period.

After the Disability ends, or after the maximum benefit period ends, whichever comes first, to keep this Policy in force You must resume the payment of premiums by paying the pro-rata premium until the next premium due date. Thereafter premiums will be due and payable as provided in the Policy.

For premiums to be waived, You must provide Us with satisfactory proof of Disability.

**PART 4 – RENEWAL OPTION IF EMPLOYED**
**BENEFITS FOR TOTAL DISABILITY – LIMITED BENEFIT PERIOD**

**Renewal Option**
After Your 65th birthday You may continue Your Policy while:

1.  You remain actively and regularly employed for at least 30 hours per week; and
2.  The premium is paid on time.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed for at least 30 hours per week.

The Policy must be in force when You elect this option.

The only benefits that will continue under this option are Benefits for Total Disability. All other benefits and options in force on Your 65th birthday will end on that date, unless otherwise stated in Your Policy.

**Maximum Benefit Period for Total Disability**
If You elect this option, We will pay the Total Disability Monthly Amount subject to the same provisions, exceptions and limitations in the Policy.

For Total Disability starting:

1.  After Your 65th birthday, but before Your 75th birthday, the Maximum Benefit Period for Total Disability will be 24 months or the period shown in the Policy Schedule if less; and
2.  After Your 75th birthday, the Maximum Benefit Period for Total Disability will be 12 months.

**Premiums after Age 65**
The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has this policy form in Your rating group in the state in which this Policy was issued. Coverage will be provided for any period after Your 65th birthday for which a premium has been accepted.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option will be returned to You.

## PART 5 - CLAIMS

### Time of Loss
All losses must occur while Your Policy is in force.

### Written Notice of Claim
Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon thereafter as is reasonably possible.    You should send the notice to Our home office, 1 Fountain Square, Chattanooga, Tennessee 37402, or to Your agent.  Notice should include Your name and the policy number.

### Claim Forms
After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days.  If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

### Written Proof of Loss
Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits.  If that is not reasonably possible, Your claim will not be reduced or denied for that reason if such proof is filed as soon as is reasonably possible.  However, unless You are legally incapacitated, written proof must be given within one year after the date it was required.

We can require any proof that We consider necessary to consider your claim.  This may include medical information, personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us.  Also, We or an independent accountant retained by Us shall have the right to examine the financial records of the business and of the Insured as often as We may reasonably require.

### Examinations
At Our expense, We can require that You undergo a medical examination, functional capacity examination and/or psychiatric examination, including any related tests as are reasonably necessary to the performance of the examination by a Physician or specialist appropriate for the condition at such time and place and as frequently as We may reasonably require. We reserve the right to select the examiner. We will pay for the examination, including the costs associated with Your travel to the examination, if the examination cannot be conducted locally.

You must meet with Our representative for a personal interview or review of records at such time and as frequently as We reasonably require.

### Responsibility to Obtain Appropriate Medical Care
You have the responsibility to obtain all reasonably appropriate medical care and treatment using all generally accepted medical procedures for the condition upon which the claim for benefits under the Policy is based.  This medical care must be medically reasonable for such conditions to an ordinarily prudent person.

**Time of Payment Of Claims**

After We receive satisfactory written proof of loss, We will pay monthly all benefits We owe You at the end of each month of Disability. For periods less than one month, We will pay 1/30th of the benefit for each day of Disability. The balance of any unpaid benefits will be paid promptly at the end of the claim.

**Payment of Claims**

All benefits will be paid to You. Benefits terminate upon Your death. If any benefit is payable but not yet paid upon Your death, then We will pay Your estate. If You are not competent to give valid release, We can pay up to 1,000 dollars to one of Your relatives who We believe is equitably entitled to it. If We do that in good faith, We will not be liable to anyone for the amount We pay.

## PART 6 – THE CONTRACT

### Entire Contract; Changes
This Policy (with the application and attached papers) is the entire contract between You and Us.  No change in this Policy will be effective until approved by a Company officer.  This approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

### Time Limit On Certain Defenses
#### Misstatements in the Application
After two years from the Effective Date of this Policy, no misstatements, except fraudulent misstatements, made by You in the application for this Policy will be used to void or Contest the Policy or to deny a claim for loss incurred or Disability that starts after the end of such two year period.

#### Limitation on Pre-existing Conditions
No claim for loss incurred or Disability that starts after two years from the Effective Date of this Policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this Policy.

### Conformity With State Statutes
Any provisions in this Policy which, on its Effective Date, conflict with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

### Legal Action
You cannot bring legal action within 60 days from the date written proof of loss is given.  You cannot bring it after 3 years from the date written proof of loss is required.

### Assignment
We will not be bound by an assignment of Your Policy for any claim unless We receive a written assignment at Our home office before We pay the benefits claimed.  We will not be responsible for the validity of any assignment.  An absolute assignment is a change of policy owner to the assignee.  A collateral assignment is not a change of the policy owner; in this case benefits will be paid jointly to the policy owner and the assignee.

### Misstatement of Age
If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

### Illegal Occupation
We shall not be liable for any loss to which a contributing cause was Your commission of or attempt to commit a felony or to which a contributing cause was Your being engaged in an illegal occupation.

## PART 7 – BENEFITS

### Benefits for Total Disability

If You are Totally Disabled, We will pay benefits as follows:

1. Benefits start to accrue on the day of Total Disability following the Elimination Period.
2. The Total Disability Monthly Amount will be paid for as long as Total Disability continues, but not beyond the Maximum Benefit Period for Total Disability.

### Benefits for Disability Resulting from a Mental Disorder

If Your Disability is contributed to or caused by a Mental Disorder, We will pay benefits according to the provisions of this Policy, except as limited by the Maximum Benefit Period for Mental Disorders.

If, at the end of the Maximum Benefit Period for Mental Disorders, You are continuously confined, due to a Disability from Mental Disorders, in a Hospital under the care of a Physician, We will waive the Maximum Benefit Period for Mental Disorders for the duration of Your hospital confinement for this Disability.

### Benefits for Residual Disability

If You are Residually Disabled, We will pay benefits as follows:

1. Benefits start to accrue on the day of Residual Disability following the Elimination Period or after Your Total Disability ends, if later.
2. The Residual Disability Monthly Amount will be determined each month using the following formulas:

   During the Work Incentive Period, the following formula will be used:

   Prior Earnings  minus(-)  Monthly Earnings  =  Residual Disability Monthly Amount*

   *Residual Disability Monthly Amount cannot exceed the Total Disability Monthly Amount.

   After the Work Incentive Period, the following formula will be used:

   $$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \times \text{Total Disability Monthly Amount} = \text{Residual Disability Monthly Amount}$$

   If the Loss of Earnings equals 75% or greater of Prior Earnings, We will deem the loss to be 100% of Prior Earnings.

3. The Residual Disability Monthly Amount will be paid for as long as Residual Disability continues, but not beyond the Maximum Benefit Period for Residual Disability.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

**Rehabilitation Benefit**
Rehabilitation will be voluntary on Your part and on Our part. If You and We agree on a program of occupational rehabilitation in advance, We will pay for the program as set forth in a written agreement. The goal of the program must be to return You to work.

The extent of Our role will be determined by the written agreement. Generally, We will pay the expenses of the program that are not already covered by some other social or insurance program. Some of the services that might be provided could include, but are not limited to:

1. coordination of physical rehabilitation and medical services;
2. financial and business planning;
3. vocational evaluation and transferable skills analysis;
4. career counseling and retraining;
5. labor market surveys and job placement services; and
6. evaluation of necessary worksite modifications and adaptive equipment.

We can periodically review the program and Your progress in it. We will continue to pay for the program as long as We determine that it is helping You return to work in Your Occupation during Your Occupation Period or Any Occupation thereafter.

As long as You continue to qualify for Policy benefits, participation in the program will not, of itself, be considered a recovery from Injury or Sickness, and benefits will continue as provided in the Policy while You are actively participating in the program.

**PART 8 - RECURRENT DISABILITY AND CONCURRENT DISABILITY**

**Recurrent Disability**
If after the end of a Disability You have a Recurrent Disability, it will be considered to be a continuing Disability in order to determine the Elimination Period and the maximum benefit period applied to it.

**Concurrent Disability**
We'will pay benefits for a Concurrent Disability as if it was caused by only one Injury or Sickness. We will not pay for more than one Disability benefit for the same period, except in the event of a Catastrophic Disability. We will always pay the larger benefit.

**UNUMPROVIDENT.**

UnumProvident Corporation
1 Fountain Square
Chattanooga, Tennessee 37402-1338
**SPECIAL OFFER**
31083-0002



025830263917

## INCOME PROTECTION ENROLLMENT APPLICATION

Please indicate the insuring company to which You are applying (together with
UnumProvident Corporation, herein collectively referred to as "the Company"):
I hereby apply for insurance based on the following representations:

☑ Provident Life and Casualty Insurance Company

### SECTION 1   PERSONAL INFORMATION

Proposed Insured: (herein referred to as "You," "Your," "I," "Me" or "My")

| 1.(a) Name: (Last, First, Middle) Seamon, Michael | Professional Designation | (b) Sex: ☐ M ☐ F   Male | (c) Date of Birth: (Mo/Day/Yr) 6/15/57 |
|---|---|---|---|

(d) Birthplace: (State/Country)  *NEW YORK / U.S.A.*

(e) Length of US Residence  *45 YEARS*   Street/Apt No./P.O. Box No.   City   State   Zip

(f) Social Security Number:  *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*

(g) Residence:  **412 Adelberg Ln, Cedarhurst, NY 11516-1102**      (h) Res Phone:  **516-295-4066**

(i) Business:      (j) Bus Phone:  *212-868-2770*

| 2.(a) Employer:  *TREBBIANNO LLC* | (b) Occupation:  *HANDBAG IMPORT* | (c) Earned Income:  *$6,200,000* |
|---|---|---|

(d) Date of hire:                               (Mo/Day/Year)     (e) Average number of hours worked per week:  *45*  hours

3. For the period of time commencing 180 days prior to, and including, the date of this application:  **YES   NO**

   (a) Have You been continuously at work on a full-time basis performing all the duties of Your occupation without
      limitation due to injury or sickness? .................................................................................... ☑ ☐

   (b) Have You been homebound or hospitalized due to injury or sickness? ........................................... ☑ ☐

   (c) How many days have You missed due to an injury or sickness? *11*   (Please provide details below)
      Details for 3(a), (b), and (c)   *I HAD BACK SURGERY ON 5/24/02. I SPENT ONE NIGHT*
      *IN THE HOSPITAL*

### SECTION 2   MEDICAL INFORMATION

If "Yes" response to Questions 1 through 4, please provide details such as diagnosis; dates or length of treatment;
treating practitioners and addresses in the space provided below.   **YES   NO**

1. Have You used tobacco in the past 12 months?
   (Tobacco means cigarettes, cigars, snuff/dip/chew, pipe or Nicotine Delivery Systems)   ☐ ☑

2. Do You need human assistance of any kind to perform everyday activities such as bathing, continence, dressing, eating
   using the toilet or transferring (for example, from the chair to Your bed), or do You have any memory loss or confusion?   ☐ ☑

3. Do You use any special medical equipment or appliances such as a cane, wheelchair, catheter, oxygen tank,
   pacemaker or artificial limb?   ☐ ☑

4. Have You ever been diagnosed or treated for or had any known indication of blindness or deafness, or the loss of use
   of both arms, both legs, or one arm and one leg, or any speech defect?   ☐ ☑
   Details for 1 through 4

### SECTION 3   EXISTING AND/OR PENDING INSURANCE COVERAGE

1. Is the insurance to be issued intended to replace any accident and sickness or life insurance? .................. ☐ Yes* ☑ No

2. Do You have, are You applying for, are You currently eligible for or will You become eligible within the next 12 months for other:
   (A) Individual   (C) Association   (D) LTD ................................................................ ☐ Yes ☑ No
                                                                                            (If "Yes," give details below)

| Name of Insurance Company(s) (including Provident/Unum/Paul Revere) | Type of Coverage (Use code above) | Monthly Face Amount Base   SIS | Elimination Period | Benefit Period | Indicate if coverage will be changed or replaced* | Effective date of discontinuance | Paid by employer? Yes   No |
|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ ☐ |
| | | | | | | | ☐ ☐ |
| | | | | | | | ☐ ☐ |

*Please complete and submit state required replacement forms if needed and provide details below.

Additional Details:

C-32395-NY-PLC                               1                               (4/01)

**SECTION 4**
**DECLARATION, AGREEMENT AND AUTHORIZATION**

It is understood and agreed as follows:

1. I have read the statements and answers recorded above. To the best of my knowledge and belief, they are true and complete and correctly recorded. They will become part of this Application and any policy(ies) issued on it.

2. I will permanently discontinue any group or individual policy(ies) shown to be discontinued in answer to question 2 in Section 3 on or before the date(s) indicated. The Company will rely on such answers in determining the amount of, if any, insurance it will issue.

3. No broker has authority to waive any of the Company's rights or requirements, or to make or alter any contract or policy.

4. The Company has the right to require medical exams and tests to determine insurability.

5. The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while My health and any other person to be insured under the policy remains as stated in the Application. The only exceptions to this are provided in the Receipt and Conditional Insuring Agreement or Payroll Deduction Authorization Form.

6. The Company is authorized to obtain an investigative consumer report on Me. I authorize the preparation or procurement of an investigative consumer report.

7. Acceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes made by amendments.

8. I have received a copy of the Notice of Information Practices (including Medical Information Bureau Notice and Fair Credit Reporting Act Notice).

9. If coverage applied for qualifies as a benefit under an employee welfare benefit plan established or maintained by the employer and governed by the Employee Retirement Income Security Act (ERISA), UnumProvident Corporation and its affiliates will be the claims administrator and have full, final, binding, and exclusive discretion to determine benefits. Pursuant to ERISA the policyholder will be entitled to appeal any claims decision.

10. I UNDERSTAND that if My answers on this application are incorrect or untrue, the Company may have the right to deny benefits or rescind My coverage.

11. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

12. If I request an issue date later than the date of this application, I understand that I may be waiving certain rights and guarantees under the Receipt and Conditional Insuring Agreement.

*CEDARHURST   NEW YORK* _____  *8/17/02* _____
Signed at: City and State                                    Dated

(X) **No Broker Signature Required** _____   (X) _____
Licensed Broker                                    Signature of Proposed Insured

### Disclosure Authorization

I AUTHORIZE: any doctor, hospital, clinic, provider of health care, insurance (or reinsuring) company, consumer reporting agency, Medical Information Bureau Inc., My insurance agents, employers or any other person or firm having: (i) Information as to cause, treatment, diagnosis, prognosis or advice of My physical or mental condition; or (ii) any other information needed to determine My eligibility for insurance; to give the UnumProvident Corporation and its affiliates and its employees and agents, My broker, or any consumer reporting agency, all such information. This may include (but is not limited to); information about driving records, mental illness, and use of alcohol or drugs.

I UNDERSTAND the information obtained with this authorization will be used by the Company to determine My eligibility for insurance. A photocopy of the authorization is valid. I or My authorized representative may request a copy of this authorization. This authorization will be in force for two years and six months from the date shown below.

(X) _____                        *8/17/02* _____
Signature of Proposed Insured                              Date

**THIS DECLARATION, AGREEMENT AND AUTHORIZATION MUST BE PROPERLY SIGNED, INCLUDING PROPOSED INSURED'S SIGNATURE, BEFORE APPLICATION CAN BE PROCESSED**

(4/01)

2

C-32395-NY-PLC